UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB MULLAN<br><br>    Petitioner,<br><br>v.<br><br>ERIC ARNOLD<br><br>    Respondent.<br><br>EKANEM ESSIEN<br><br>    Petitioner,<br><br>v.<br><br>SUZANNE PEERY<br><br>    Respondent. | Case Nos. 15-cv-01003-JD; 15-cv-02032-JD<br><br>**ORDER RE HABEAS CORPUS PETITIONS AND CERTIFICATES OF APPEALABILITY**<br><br>Re: *Mullan*, Dkt. No. 1, *Essien*, Dkt. No. 1 |

Petitioners Jacob Christian Mullan and Ekanem Kufreobon Essien, currently in custody as California state prisoners, seek federal habeas relief under 28 U.S.C. § 2254(d) arising out of convictions at a joint trial. The requests are largely overlapping and the Court addresses both petitions in this order. They are denied.

A California state jury convicted petitioners of forcible rape while acting in concert. The jury found gang enhancements based on affiliations with the "Fremont Mexican Territory" (FMT), a gang aligned with the Norteños. Essien was convicted of second-degree robbery and again sentenced with a gang enhancement. Braian Calvo, a third defendant who is not a petitioner here, was tried with petitioners and convicted of various counts and sentenced with gang enhancements.

In a state court appeal, Essien and Mullan raised several alleged trial errors. The California Court of Appeal issued a reasoned decision rejecting all of petitioners' contentions. *People v. Essien et al.*, No. A134046, 2013 WL 5838521 (Cal. Ct. App. Oct. 31, 2013).

**BACKGROUND**

The material facts leading up to petitioners' convictions are undisputed. As the Court of Appeal recounted, in the early hours of January 29, 2011, pseudonymous victim Jane Doe got a call from a friend about a party at the home of an acquaintance, Eric Kuehn. Doe had been to Kuehn's house before, and went over. Essien, Mullan, and Calvo were at the party. Calvo, who was 18 years old at the time, "began flirting aggressively with Doe," but she rebuffed him because of his young age. *Essien*, 2013 WL 5838521, at *2. The party broke up while it was dark outside, and Kuehn suggested Doe stay until the sun came up. Doe and Kuehn watched television in his bedroom, where she had been before without incident. Essien, Mullan, and Calvo joined them.

The appellate court described the rape in the bedroom and a subsequent assault:

> Suddenly, Essien walked over and pushed Doe onto the bed. At first she thought he was playing, but Essien continued to hold her down as she told him to stop. Mullan pulled Doe's jeans and underwear down around her ankles. Essien began having sex with Doe while she resisted. Kuehn lay on the bed next to her, but did nothing; Mullan was behind Essien and held Doe's legs. After Essien raped Doe for a few minutes, Mullan stepped up to the foot of the bed and began having sex with Doe as she screamed and thrashed on the bed. Calvo, who was sitting on the futon, said, "That's what you get, bitch." Kuehn told Mullan to stop because his parents would wake up, and Mullan stopped about a minute later. Doe got up, pulled up her pants, grabbed her purse and left the room. Kuehn opened the front door of the house for her and she walked outside.
>
> Doe took her cell phone out of her purse to call her parents and was about to dial the number when the three defendants came up behind her. Essien punched her right eye, took her purse (which contained her cash and driver's license) and ran up the street. Calvo punched Doe in the left eye, took her phone and ran away. Doe looked at Mullan and said, "What the hell," and he ran off. Doe chased Calvo because she wanted her phone, and he punched her again in the left eye. She continued to chase him but gave up after he punched her in the left leg, causing her to fall.

2

A married couple encountered Doe on the street and called 911. A police officer responded and Doe was taken to a hospital for care. A sexual assault response team nurse examined Doe and collected samples. A forensic analysis did not yield scientific evidence linking the petitioners to Doe.

Doe initially did not cooperate with the police investigation, and did not tell them she had been at Kuehn's house. A few days after the incident, however, she advised a detective that "she had changed her mind and would cooperate, indicating she was afraid of retaliation because her assailants were in a gang." *Id.* at *3. Doe identified Mullan, Essien, and Calvo in photographs and in person at trial.

The district attorney charged Essien and Mullan with rape in concert under California Penal Code section 264.1(a), with an allegation the crime was committed for the benefit of a criminal street gang under section 186.22(b)(1). Essien and Calvo were also charged with second-degree robbery, again with a gang enhancement allegation under section 186.22(b)(1). Calvo was charged with assault by means of force likely to produce great bodily injury under section 245(a)(1), with a gang enhancement allegation.

The trial court denied defendants' motion for separate trials and they were jointly tried before a single jury. All three defendants were convicted as charged and the gang enhancements alleged for each of them were found to be true. Essien was sentenced to 34 years and 4 months in prison, and Mullan was sentenced to 16 years in prison.

Petitioners filed a direct appeal. The Court of Appeal denied all of petitioners' claims, including the claims that are now pending before the Court. The California Supreme Court summarily denied review.

Mullan and Essien now contend that: (1) they were denied a fair trial by the joint trial; (2) they were denied a fair trial by admission of expert witness testimony on gangs; (3) there was insufficient evidence to support the gang enhancements for the sexual assault; and (4) the cumulative effect of these errors made the trial unfair. Essien brings additional claims alleging insufficient evidence to support the gang enhancement for the robbery and that his *Faretta* request to represent himself was improperly denied.

**GOVERNING STANDARDS**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs federal habeas review and sets a high bar for petitioners to cross. Under AEDPA, a federal court may not grant a habeas petition for any claim that was adjudicated on the merits in state court unless that adjudication resulted in (1) a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) a decision that was based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

For claims under the "contrary to" clause of section 2254(d)(1), "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "[A]s the statutory language makes clear," under section 2254(d)(1), the "source of clearly established law" is restricted to the Supreme Court's jurisprudence. *Id.* at 412. The "unreasonable application" language in section 2254(d)(1) has been narrowly construed. Under controlling precedent, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (emphasis in original; quoting *Williams*, 529 U.S. at 410). "If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 102.

For a state court's factual findings, section 2254(d)(2) "authorizes federal courts to grant habeas relief in cases where the state-court decision 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004). A federal court "may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Id.* The same standard of unreasonableness applies under subsections (d)(1) and (d)(2) of section 2254. *Torres v. Prunty*, 223 F.3d 1103, 1107-08 (9th Cir. 2000). Section 2254(d)(2) also sets "a daunting standard -- one

that will be satisfied in relatively few cases. Nevertheless, the standard is not impossible to meet." *Taylor*, 366 F.3d at 1000; *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Deference does not by definition preclude relief. A federal court can disagree with a state court's credibility determination and, when guided by AEDPA, conclude the decision was unreasonable").

The California Supreme Court summarily denied the petitions for review, and so the California appellate court's decision is reviewed here. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991).

## DISCUSSION

### I. JOINDER

The appellate court upheld the denial of petitioners' motion to sever the trial. *Essien*, 2013 WL 5838521, at *6-9. Petitioners say this deprived them of a fair trial because it exposed the jury to evidence about events such as Calvo's hitting of the victim that would otherwise not have been presented. *See* Dkt. No. 2 at 52-53; Dkt. No. 3 at 35-36.

No clearly established Supreme Court precedent addresses when a trial in state court must be severed for multiple defendants. *Martinez v. Yates*, 585 F. App'x 460, 460 (9th Cir. 2014). The Supreme Court noted in a footnote in *United States v. Lane* that "misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." 474 U.S. 438, 446 n.8 (1986). But the Ninth Circuit has held this footnote "does not qualify as clearly established federal law under federal habeas law." *Collins v. Runnels*, 603 F.3d 1127, 1132 (9th Cir. 2010). Consequently, petitioners are not entitled to habeas relief on this ground. *Martinez*, 585 F. App'x at 460.

Even if, in the absence of Supreme Court precedent, Ninth Circuit case law were applied, the appellate court's severance determination is not objectively unreasonable. In our circuit, due process may be violated when the denial of severance would render a trial fundamentally unfair. *Grisby v. Blodgett*, 130 F.3d 365, 370 (9th Cir. 1997); *see also Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000). The requisite level of unfairness is reached only "if the impermissible joinder had a substantial and injurious effect or influence in determining the jury's

verdict." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) (internal quotation omitted). "In evaluating prejudice, the Ninth Circuit focuses particularly on cross-admissibility of evidence and the danger of 'spillover' from one charge to another." *Id.*

Here, the appellate court expressly held that joinder did not give rise to any prejudice because "the jury would have heard the same evidence during a separate trial." *Essien*, 2013 WL 5838521, at *8. It found that "the rape, robbery, and assault were all part of a single transaction resulting in a number of physical injuries to Doe, and it is inconceivable the evidence in any separate trial could have been presented in such a way that the jury would not have learned of the other offenses. This is particularly true in light of the gang allegation common to all counts, which required proof of defendants' relationship to the gang and association with each other." *Id.* For Mullan specifically, the court further found that the "evidence of the robbery and assault can hardly be said to be more inflammatory than the rape when it was clear Mullan did not participate in those subsequent offenses." *Id.*

These conclusions are not objectively unreasonable or otherwise infirm. The Court of Appeal held that the evidence was admissible under California law, which "significantly reduces the potential prejudice" to petitioners. *Comer v. Schriro*, 480 F.3d 960, 985 (9th Cir. 2007). Petitioners make no showing that the evidence would not have been admissible in separate trials. In addition, any risk of prejudice was further diluted because the three charged crimes -- the rape, the robbery, and the subsequent physical assault -- were distinct events, a factor that largely eliminated any risk that the jury could have been confused or unable to compartmentalize the evidence, as petitioners contend. *Id.* While petitioners criticize the general limiting instruction as ineffective, it properly directed the jury to consider each count separately. 3 CT 602; *Davis*, 384 F.3d at 639. And petitioners cannot reasonably say that a physical assault would be more inflammatory to a jury than sexual assault; the reverse would actually appear more likely. A joint trial was not fundamentally unfair, and habeas relief is denied on the joinder claim.

## II. GANG EXPERT TESTIMONY

Several of the claims raised in the petitions involve the admission of evidence from the prosecution's gang expert, Fremont Police Detective Eric Tang. *Essien*, 2013 WL 5838521, at

6

*3. Tang testified that FMT is a criminal street gang operating in the Irvington district of Fremont and is aligned with the Norteño street gangs. *Id.* In Tang's opinion, all three defendants were FMT gang members on the date of the crimes against Doe, based on tattoos, prior admissions and gang associations. *Id.* Tang opined that Kuehn was also a member of FMT, based on his tattoos, his prior contacts with the police, and gang memorabilia found in his house. *Id.*

Tang also testified about the role of crimes in gangs and communities. *Id.* at *4. As the Court of Appeal summarized:

> In Tang's opinion, the sexual assault of Doe was committed for the benefit of a gang. Rape, though sexual in nature, is more about power than arousal, and the gang benefits by having four members who can verify the crime and "throw out into the community saying, look, we are still violent, we are still doing what we do so therefore the community should continually be afraid of us." The same was true of the robbery and assault, which appear to have been committed to silence Doe. Crimes committed by gang members are like "a notch in your belt," with the more violent crimes garnering more status. Gangs benefit when their members commit crimes together, because it increases the chance of the crime being successful, it proves the loyalty of the gang members who participate, and it makes it more difficult for a gang member to exaggerate his role in an offense.
>
> Regarding the sexual assault against Doe, Tang believed it was committed "in association" with gang members because Essien and Mullan worked together to commit the crime. In Tang's opinion, the robbery and assault committed by Calvo shortly after the rape was designed to show his dedication to the gang, particularly because he had not participated in the initial sexual assault. Tang also believed all the crimes were "done with the specific intent to promote, further or assist in gang conduct." All of the events happened in the Irvington district, which the victim knew to be Norteño territory, at a party where Norteño gang members were present, and the crimes involved Norteño gang members working together. "It promotes the gang, it promotes everything we talked about in terms of the power and fear it's going to have over the community."

In response, Calvo's defense expert testified that the sexual assault probably was not gang related because gang members, in his opinion, do not respect it. *Id.* This expert also said that none of the defendants were alleged to have exhibited gang colors, signs or names during the incident. *Id.* Tang acknowledged on cross-examination that a rape involving a single suspect

7

and a single victim would be "frowned upon" by Norteños, but that a rape involving several men "was actually somewhat accepted because it's almost seen as like a party or some sort of ... exercise of power over somebody as opposed to ... sexual gratification." *Id.*

Petitioners contend that Tang's testimony about the formation of the Norteño gang and the organizational intent or purpose of the crimes should have been excluded as prejudicial. On direct appeal, the court found that both of these claims were forfeited for the lack of timely objection at trial. *Essien*, 2013 WL 5838521, at *12. For the gang formation testimony, the court held that the issue was not "preserved by a motion in limine seeking to bifurcate evidence of the gang enhancements generally." *Id.* It explained:

> "A motion in limine can preserve an appellate claim, so long as the party objected to the specific evidence on the specific ground urged on appeal at a time when the court could determine the evidentiary question in the proper context. [Citations.]" (*People v. Solomon* (2010) 49 Cal. 4th 792, 821.) The pretrial request to bifurcate the gang enhancements focused on Doe's prior inconsistent statements, which allegedly weakened the evidence of the substantive charges, and was insufficient to generally alert the court to the specific aspects of Tang's testimony now alleged to be unduly prejudicial.

For the organizational purpose testimony, the appellate court stated that "[d]efendants additionally argue Tang should not have been permitted to offer an opinion the crimes were committed for the benefit of the gang and with the specific intent to promote, further or assist in gang conduct, because this amounted to no more than a subjective opinion about defendants' state of mind. As the People note, the claim has been forfeited for lack of a timely objection." *Id.*

These defaulted claims are not subject to federal habeas review. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). It is a "well-settled rule" that federal courts cannot grant habeas review of a state prisoner's claim when the state court explicitly relied on an independent and adequate state procedural rule for its decision. *Fairbank v. Ayers*, 650 F.3d 1243, 1256 (9th Cir. 2011) (internal quotation omitted). When an independent state procedural rule forecloses appeal and it is "clear, consistently applied, and well-established," a federal court cannot reconsider the issue on habeas review. *Id.* Under California law, the failure to timely object to evidence at trial

8

prevents the possibility of appeal on the issue. *Id.* at 1256-57. The Ninth Circuit has expressly held that this rule, often called the "contemporaneous objection rule," is an adequate and independent state ground for dismissal of a federal habeas claim. *Id.*

A petitioner may challenge a procedural default only if he can establish cause and prejudice, or that the failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. To establish cause, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish a "fundamental miscarriage of justice," a petitioner must demonstrate "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Wood v. Ryan*, 693 F.3d 1104, 1117-18 (9th Cir. 2012) (internal quotation omitted). A claim of actual innocence is rarely met and must be based on reliable evidence not presented at trial. *Casey v. Moore*, 386 F.3d 896, 921 n.27 (9th Cir. 2004).

Essien and Mullan did not address the issue of procedural default in their briefs. Instead, they focused on the why the court of appeal incorrectly found that the claims were forfeited under California law, and why, if this Court were to reach the merits, the "wrongly-admitted evidence" rendered the trial "fundamentally unfair." *See* Dkt. No. 2 at 39-49; Dkt. No. 3 at 21-31. Because the procedural default was ignored, neither petitioner showed cause, or demonstrated why the jury verdicts resulted in the conviction of one actually innocent. *Casey*, 386 F.3d at 921 n.27. Consequently, habeas relief is denied on the issue of the gang expert testimony.

### III. GANG ENHANCEMENTS

Petitioners challenge the sufficiency of the evidence for a gang enhancement for the rape convictions. Essien individually challenges the evidence supporting the gang enhancement for the robbery charge. These challenges fail.

As an initial matter, a court weighing an insufficiency claim must determine whether, after viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a

9

reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard applies to state sentence enhancements, and a petitioner may obtain habeas relief only if no rational trier of fact could have found the elements of the enhancement true beyond a reasonable doubt. *See Garcia v. Carey*, 395 F.3d 1099, 1102-03 (9th Cir. 2005).

In the context of habeas review, the "inquiry is even more limited." *Emery v. Clark*, 643 F.3d 1210, 1213-14 (9th Cir. 2011). The district court reviews only whether "the state court's decision was contrary to or reflected an unreasonable application of *Jackson* to the facts of the particular case." *Id.* at 1214. These standards pose a "double dose of deference that can rarely be surmounted." *Boyer v. Belleque*, 659 F.3d 957, 964 (9th Cir. 2011).

"Insufficient evidence claims are reviewed by looking at the elements of the offense under state law." *Emery*, 643 F.3d at 1214. California Penal Code section 186.22(b)(1) authorizes a 10-year sentence enhancement for any violent crime "committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any conduct by gang members." The California Supreme Court interprets this to contain two distinct prongs: the "benefit" prong and the "intent" prong. *People v. Albillar*, 51 Cal. 4th 47, 59-65 (2010).

The first prong may be satisfied by showing that the crime was "for the benefit of" the gang, "at the direction of" the gang, or committed "in association with" the gang. Cal. Pen. Code § 186.22(b)(1). Because not every crime committed by gang members is related to a gang, this first prong ensures that the crime is "gang related." *Albillar*, 51 Cal. 4th at 60. The second prong may be satisfied by showing the "specific intent to promote, further or assist in *any* criminal conduct by gang members--including the current offenses--and not merely *other* criminal conduct by gang members." *Id.* at 65 (emphasis in original). The statute only requires the specific intent to promote, further, or assist criminal conduct by gang members of that gang, not the gang as a whole. *Id.* at 67.

### A. Enhancement for Rape

Petitioners argue that the appellate court unreasonably found sufficient evidence that the rape was committed in association with the gang because "not every crime committed by gang

10

members is related to a gang." Dkt. No. 2 at 23; Dkt. No. 3 at 12. They say the appellate court improperly relied on Tang's expert opinion and that a reasonable trier of fact could have concluded only that "Jane Doe was assaulted by individuals acting in concert, but not acting together *as gang members*." Dkt. No. 3 at 18; *see also* Dkt. No. 2 at 26.

The appellate court considered and rejected these arguments. *Essien*, 2013 WL 5838521, at *9-10. For the first prong, the appellate court pointed to significant evidence that the rape was committed in association with a gang:

> Here, the jury could reasonably determine the following: all three defendants were Norteño/FMT gang members; Essien and Mullan acted in concert when they raped Doe in the home of Kuehn, another FMT gang member; and the rape was committed in Calvo's presence and with his explicit approval, in apparent retaliation for Doe's earlier rejection of Calvo. Tang, given hypothetical questions based on these facts, concluded the rape was committed in association with the gang. In addition to Essien's and Mullan's cooperation in effectuating the sexual assault, the presence of four gang members in the bedroom was significant, as the perpetrators knew "no matter what you're going to have my back, no matter what I'm going to rely on you and we're not going to ... snitch on each other." "[T]he jury could reasonably infer the requisite association from the very fact that [each] defendant committed the charged crimes in association with fellow gang members." (*People v. Morales* (2003) 112 Cal. App. 4th 1176, 1198 (*Morales*).)

These findings are neither unreasonable nor contrary to the facts or law. Petitioners advance a spate of contentions about why the findings are infirm, but none of them cross the high threshold for a sufficiency of the evidence claim on habeas review. For example, petitioners say that Tang's expert testimony should not have been considered, but that testimony stands on habeas review, as discussed above, and in any event the Court is precluded from re-weighing the evidence or assessing the credibility of witnesses. *See Bruce v. Terhune*, 376 F.3d 950, 957-58 (9th Cir. 2004).

Mainly for the sake completeness, the Court also notes that a review of the record confirms that Tang's opinions were not based on an "un-explicated factual basis which existed solely in Tang's consciousness," as petitioners suggest. Dkt. No. 3 at 17; *see also* Dkt. No. 2 at 29. In the face of vigorous cross-examination and many hypothetical questions, Tang rationally

11

explained the foundations of his opinion. Petitioners say that no gang signs or colors were shown during the sexual assault, nor were gang-related threats made after the incident. But this is not required under state law for the crime to be "gang-related." *See e.g., Emery*, 643 F.3d at 1214. And the record was not devoid of gang signifiers. Doe testified that she thought Kuehn was in the Norteños based on "things written on his walls in his bedroom, tattoos, things like that." 2 RT 310, 312.

Petitioners' claim of insufficient evidence for the jury to find the requisite intent to "promote, further or assist gang members in their capacity or role *as gang members*," Dkt. No. 3 at 19; *see also* Dkt. No. 2 at 29, is equally unavailing. As the appellate court held, "[i]f substantial evidence establish[ed] the defendant intended to and did commit the charged felony with known members of a gang, the jury may fairly infer" the defendant had the specific intent to promote, further, or assist criminal conduct by those gang members. *Essien*, 2013 WL 5838521, at *10 (quoting *Albillar*, 51 Cal. 4th at 68.) It concluded that "[t]he evidence in this case readily supports the inference all three defendants acted with the intent to promote, further or assist their fellow gang members; i.e., each other." *Id*.

This finding again is not unreasonable or contrary to law. The jury heard Doe testify that Mullan helped hold her down while Essien raped her. 2 RT 284-85. The jury then heard that Mullan committed the second rape while other gang members looked on. 2 RT 285. Tang testified that, in his opinion, the defendants were all known gang members. *See e.g.*, 4 RT 640.

Habeas relief is denied on the claims of insufficient evidence for the rape enhancements.

### B. Enhancement for Robbery

Essien's attack on the robbery-related enhancement fails for similar reasons. The appellate court found that "[s]ubstantial evidence supports the conclusion [the robbery was] committed in association with the gang, designed as [it was] to discourage a report of the gang-related rape." *Essien*, 2013 WL 5838521, at *10. While the appellate court did not specifically call out the evidence it relied on, this was not an unreasonable application of *Jackson* in light of the record as a whole.

1    Tang testified that "taking items that potentially identify -- actually, that do identify
2    where a victim lives gives that much greater power and fear over the victim." 3 RT 611. Given
3    that Doe's ID and phone were stolen, he concluded this was "obviously done to silence the
4    victim in terms of this is our gang, this is what we do." 3 RT 612. And Tang's testimony was
5    not "the exclusive source of evidence that the offense [robbery] was gang-related." Dkt. No. 2 at
6    34. Doe testified that she left the scene of the sexual assault, in the presence of four gang-
7    members, with a phone in her hand ready to make a call and that she was then attacked. She did
8    not initially tell police about her perpetrators for fear of retaliation by suspected gang members.
9    2 RT 295. This is sufficient evidence for a rational jury to conclude that the robbery was in
10   "association" with a gang. *See Albillar*, 51 Cal. 4th at 62.

The appellate court found that "[t]he evidence in this case readily supports the inference that all three defendants acted with the intent to promote, further or assist their fellow gang members." *Essien*, 2013 WL 5838521, at *10. The record shows that Essien and Calvo were known gang members and they intended to commit the robbery together. *See e.g.*, 2 RT 288-89; 4 RT 640. Nothing more is required to satisfy the specific intent requirement of section 186.22(b)(1). *See Albillar*, 51 Cal. 4th at 65-66; *see also Emery*, 643 F.3d at 1215. Essien's claim for the robbery gang enhancement is denied.

## IV.    *FARETTA* REQUEST

Essien argues that the appellate court unreasonably found his waiver of right to counsel was equivocal. This claim fails.

A criminal defendant has a Sixth Amendment right to self-representation. *Faretta v. California*, 422 U.S. 806, 832 (1975). But a defendant's decision to represent himself and waive the right to counsel must be unequivocal, knowing and intelligent, timely, and not made for purposes of securing delay. *Id.* at 835; *United States v. Erskine*, 355 F.3d 1161, 1167 (9th Cir. 2004). These requirements are imposed to prevent defendants from waiving their right to counsel "either inadvertently or impulsively, and to prevent them from manipulating the mutually exclusive rights to counsel and self-representation." *United States v. Hernandez*, 203 F.3d 614, 621 (9th Cir. 2000), *overruled on other grounds by Indiana v. Edwards*, 554 U.S. 164

13

(2008). While the Supreme Court has not clearly addressed what an "unequivocal" request means in this context, district courts may consider "three factors to determine whether a request for self-representation is unequivocal: the timing of a request, the manner in which the request was made, and whether the defendant repeatedly made the request." *Stenson v. Lambert*, 504 F.3d 873, 882 (9th Cir. 2007).

A state court's finding that a defendant's request to represent himself was equivocal is considered a factual determination under 28 U.S.C. § 2254(d)(2), and federal courts "must give significant deference to the trial court's factual findings." *Id.* at 882-83. Petitioner's burden is not to convince the Court that his request was unequivocal, but that the state court's finding otherwise was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* at 883.

On June 8, 2011, the trial court held a *Marsden* hearing for Essien's motion for new counsel. 9 RT 1-19. Essien believed he was not being properly represented. *See* 9 RT 1-13. After the trial court denied the request for new counsel, Essien said, "Your Honor, I'd like to defend myself pro per." 9 RT 15-17. The full transcript then states:

> THE COURT: No. You'll get an opportunity to do that. But you see, the thing is that the courts have found that a lot of times defendants essentially--when they don't get their way at the *Marsden* motion, they make that claim. So we don't just say, oh yeah, you can represent yourself.
>
> [ESSIEN]: I thought that was my constitutional right to represent myself.
>
> THE COURT: You do have a right to represent yourself, but you have to state it clearly, unequivocally, and you have to do it essentially without regard to who you might have for an attorney. You want to represent yourself because you want to represent yourself. But you are at the point where you know how to pick a jury, you know how to exercise challenges, you know how to do direct examination, you know how to do cross-examination, you know the laws of evidence, and you will be able to effectively represent yourself.

14

> Now, if you have that opinion, then absolutely you will be able to represent yourself. But you don't do it on the spur of the moment; you don't do it because you're unhappy that you didn't get your way in this motion.
>
> [ESSIEN]: Then how do I do it?
>
> THE COURT: Well, when you get back there to Department 513 what you do is--with it just being denied, I doubt if they'll do your *Faretta* motion today. But they may put it on another date so that you can come in, fill out the form that you understand that it's almost always a bad idea to represent yourself, that--essentially what you do is you give up any rights concerning incompetency of counsel when you represent yourself. So if you make a shambles of it, you make a shambles of it, and you've got nobody to blame but yourself.
>
> Like I say, what happened was that *Marsden* motions have been going on for a long time. A lot of guys sit there but they don't get their way, and they say "I want to represent myself."
>
> And the courts are kind of taking the position that that's not really an unequivocal statement of the desire to represent yourself. That's what's going to be required. Like I say, they need to get that clear on the record that you're doing this because this is what you want to do, not because you're unhappy about something else.
>
> And that needs to be done in open court. Remember these are closed proceedings to protect the attorney-client privilege and such. So you'll have to do that in open court. But I've got a note on the file here that you may want a *Faretta*. Okay?
>
> [ESSIEN]: Um-hum.

On these and other facts, the appellate court found that "Essien's request was equivocal and does not require reversal of the judgment." *Essien*, 2013 WL 5838521, at *6. Specifically, it noted that Essien's request was in "direct response to the court's denial of his *Marsden* motion, in apparent frustration at the court's order." *Id.* It also found that "Essien did not again raise the issue of self-representation, despite having been told by the court he could renew his *Faretta* request when the case was sent back to Department 513, where Essien was to be arraigned with

his codefendants. When a request for self-representation is made as an impulsive response to the denial of a motion for substitute counsel, and is not renewed at a later date, it is not unequivocal." *Id.*

The court then addressed whether "the [trial] court misled him into believing he would only be allowed to represent himself if he mastered certain legal skills, whereas a defendant's technical legal knowledge is not a prerequisite to self-representation." *Id.* It concluded that "[a]lthough the court listed various legal procedures that would occur during a trial (jury selection, direct examination, cross-examination, the application of the rules of evidence) it also advised Essien he would be permitted to represent himself upon signing a form acknowledging that self-representation was usually a bad idea and giving up the right to claim ineffective assistance of counsel if he proceeded in pro per." *Id.*

Once again, nothing here amounts to an unreasonable determination of the facts or any other basis for habeas intervention. Regardless of whether petitioner was "emotional," it is not unreasonable to conclude that the request was "impulsive" in response to the denial of the *Marsden* motion. *Jackson v. Ylst*, 921 F.2d 882, 888 (9th Cir. 1990). The trial judge appears to have viewed the request as impulsive, saying to Essien that the request couldn't be at the "spur of the moment" or "because you're unhappy" about something else. *See Hernandez*, 203 F.3d at 621 (a trial court's response to self-representation request can determine whether the request was equivocal). After hearing the trial court, Essien did not object or say that he had thought it all through and wanted to proceed on his own.

It also cannot be said that Essien "repeatedly" made a request for self-representation. Essien made the request once, and was told by the trial judge that he could fill out a form if he wanted to renew the request that same day. Essien did not renew this request or seek to represent himself later in trial. Essien asks the Court to consider the effect of the immediate denial and comments about requisite legal knowledge on his decision not to revive the motion. But this case is not like *Hernandez*, in which the Ninth Circuit found it reasonable for the defendant not to renew a *Faretta* request "[g]iven that the basis for the judge's denial of the request was that [the defendant] was incapable of putting on an effective defense." 203 F.3d at 621-23 (for

16

similar reasons, the out of circuit cases Essien cites are also inapposite, *Williams v. Bartlett*, 44 F.3d 95 (2d Cir. 1994); *Orazio v. Dugger*, 876 F.2d 1508 (11th Cir. 1989)). Here, although the trial judge listed types of legal skills that would provide competent representation, he did not indicate these would prevent Essien from renewing his *Faretta* motion. He expressly told Essien to go to Department 513 and fill out the form, and that he was writing down a note in his file in anticipation of future requests. Habeas relief is denied for Essien's *Faretta* claim.

## V. CUMULATIVE ERROR

Petitioners contend that the cumulative effect of the evidentiary errors and failure to sever the trial violated due process by resulting in a "fundamentally unfair" trial. "The cumulative error doctrine in habeas recognizes that, even if no single error were prejudicial, where there are several substantial errors, their cumulative effect may nevertheless be so prejudicial as to require reversal." *Parle v. Runnels*, 387 F.3d 1030, 1045 (9th Cir. 2004) (internal quotation omitted). This is not germane here, where there are no substantial errors to be aggregated. *See Hayes v. Ayers*, 632 F.3d 500, 524 (9th Cir. 2011).

## CONCLUSION

The petitions are denied. The Court also denies a certificate of appealability pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases. Petitioners have failed to make a "substantial showing of the denial of a constitutional right" on any of their claims. *See* 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining that an applicant satisfies this standard where he or she shows that reasonable jurists could find the issues debatable or that the issues are "adequate to deserve encouragement to proceed further") (internal quotation omitted).

**IT IS SO ORDERED.**

Dated: April 20, 2017

JAMES DONATO
United States District Judge

17